# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOE THOMPSON, SR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHICAGO PARK DISTRICT, )<br>)<br>Defendants. ) | Case No. 09 C 6057 |

## MEMORANDUM OPINION AND ORDER[1]

MATTHEW F. KENNELLY, District Judge:

Joe Thompson, Sr., has sued his former employer, the Chicago Park District. He alleges that the Park District violated his rights under the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the Illinois Human Rights Act (IHRA), and Illinois common law. The Court previously dismissed Thompson's IHRA and common law claims [docket nos. 38, 39]. The Park District has moved for summary judgment on Thompson's ADA and ADEA claims. For the reasons below, the Court grants the motion.

## Background

The Court takes the following facts from the allegations in Thompson's first amended complaint and the parties' submissions on the summary judgment motion.

Thompson began working for the Park District in 1979 as a seasonal lifeguard.

---

[1] The Court thanks plaintiff's appointed counsel, Frederick L. Schwartz, Milton E. Castro, and Brandon R. Mita, for their thorough and diligent work on plaintiff's behalf.

The Park District promoted Thompson to a year-round lifeguard in 1989, an hourly natatorium instructor in 1997, and, finally, a monthly natatorium instructor in 2001. In the late 1980s or early 1990s, Thompson was diagnosed as having diabetes. Due to the illness, Thompson has at times experienced blurred vision, difficulty reading, joint pain, dizziness, and fatigue.

As a monthly natatorium instructor, Thompson's primary responsibilities were to plan, organize and conduct aquatics programs at Park District beaches and pools and supervise a staff of lifeguards performing beach and pool safety activities. The Park District's description of the position states as follows:

> Supervises a staff performing life guarding and aquatic programming activities at a Park District beach or pool facility. Supervises unorganized play and enforces Park District rules and regulations. Observes and corrects hazardous situations and behaviors. Uses lifesaving techniques to respond to emergency and life-threatening situations. Administers first aid and CPR. Inspects pools for cleanliness and safe operation. Notifies supervisor of the need for pool maintenance and repairs. Uses the work order system to request beach maintenance and repair. Provides instruction in strategies of aquatic team sports, individual sports and conditioning. Provides information on the rules and regulations of individual and team sports. May officiate team and individual sports. Issues equipment and supplies. Sets up recreation apparatus and equipment. Develops and maintains a positive relationship and open channel of communication with participants, parents, volunteers and the community. Assists in the coordination of aquatic special events. Maintains records and prepares routine reports. Attends and may assist in conducting workshops, in-service training seminars and employee skills assessment.

Def.'s LR 56.1 Stat., Tab B, Ex. 2. The Park District administers swim tests to monthly natatorium instructors and other aquatics employees. To pass the test, an employee must swim two hundred yards in three and a half minutes or less.

Between 1979 to 2005, Thompson took and passed the swim test every year, though he sometimes required more than one attempt. In February 2006, he failed the

test. Thompson then advised Park District Manager of Beaches and Pools Janet McDonough and human resources manager Mary Saieva that he could not pass the test due to joint pain. In May 2006, the Park District received a note from Thompson's physician, Dr. Robert Stannard, requesting that Thompson be "[e]xcused from swimming test" on May 13, 2006 and expressing uncertainty "as to when he will be ready in the future." *Id.*, Tab E, Ex. 2. Based on the note, the Park District excused Thompson from any further swim tests in 2006.

According to Thompson, he and other monthly natatorium instructors repeatedly requested permission from the Park District to swim an untimed quarter-mile in lieu of passing the swim test. The Park District refused all such requests.

In June 2006, the Park District received a letter from Dr. Stannard restricting Thompson from "certain activities of the left arm including heavy lifting, swimming or other activities requiring forced extension of the elbow" pending an orthopedic consultation. *Id.*, Ex. 3. In early 2007, Thompson suffered an injury when he fell on some ice. After the accident, the Park District received two notes from Thompson's physicians: one indicating that Thompson "may return to work" on February 13, 2007 and the other requesting that he be "excused from [the] swim test" scheduled for that date. *Id.*, Ex. 4. On February 16, the Park District received a letter from Dr. Stannard stating:

> Mr. Thompson has been a patient in our offices for the last eighteen years and currently is suffering from multiple musculoskeletal complaints which make swimming activities very painful. Please excuse him from such activities for the foreseeable future.

*Id.*, Ex. 5. The Park District did not allow Thompson to work after receiving the letter.

In April 2007, Thompson submitted a medical certification for leave pursuant to the Family and Medical Leave Act. The certification affirmed that Thompson was unable "to perform the functions of his[ ] position." Def.'s LR 56.1 Stat., Tab B, Ex. 5. The Park District granted Thompson twelve weeks of leave from April 7, 2007 to June 28, 2007. Near the end of the leave period, Dr. Stannard sent the Park District a letter stating:

> Mr. Thompson has been a patient in our offices for the last eighteen years and currently is suffering from multiple musculoskeletal complaints with recent MRI of his left shoulder demonstrating supraspinatus tendinopathy with a probable partial tear, with possible degenerative tear of the anterior-inferior glenoid rim and degenerative changes of the AC joint. He was earlier diagnosed with a mixed polyneuropathy of the left upper extremity with element of carpal tunnel syndrome, as well as left arm epicondylitis with probable cubital tunnel syndrome. He is being followed by an orthopedic surgeon, Dr. Joseph Sheehan. I am recommending a leave of absence for Mr. Thompson for further medical evaluation and treatment. At this time I expect this leave to last one year.

Def.'s LR 56.1 Stat., Tab E, Ex. 8. Thompson also requested in writing from the Park District "a leave of absence for further evaluation and treatment" that he expected "to last for one year." *Id.*, Ex. 9.

The Park District granted Thompson a leave of absence from June 29, 2007 through October 1, 2007 in accordance with its leave policy. The letter granting the leave informed Thompson: "In order to return to work you must bring evidence from your physician of your fitness to return to full duty. Please submit this evidence to Human Resources prior to returning." *Id.*, Ex. 10. The letter also cautioned Thompson that he would need to request a longer leave if he was "unable to return to full duties on October 1, 2007." *Id.*

In September 2007, Dr. Stannard sent the Park District a letter indicating that

4

Thompson "continue[d] to suffer from multiple musculoskeletal complaints," "a mixed polyneuropathy of the left upper extremity," "a left cubital tunnel syndrome," and "a motor neuropathy affecting his right leg." Dr. Stannard "continue[d] to recommend a leave of absence for Mr. Thompson," which he expected "to last until the spring of 2008." *Id.*, Ex. 11.

The Park District granted Thompson another leave of absence from October 2, 2007 through April 6, 2008. The Park District again reminded Thompson that, to return to work, he would need evidence from his physician of his ability to return to full duty. The Park District also cautioned Thompson that failure to return from the leave on April 7 could render him "subject to disciplinary action, including discharge." *Id.*, Ex. 12.

While on leave, Thompson informed Saieva on several occasions that he wanted to return to work. According to Thompson, Saieva instructed him that he could return as a monthly natatorium instructor only if he obtained a release to full duty from his physician and passed the swim test. *See* Pl.'s Resp. to Mot. for Summ. J., Ex. 1 at 160-61. She also told him that if he wanted a different position, he would have to apply and qualify for the position. *Id.* Thompson testified that he also contacted human resources manager Mary Ann Rowland to seek an accommodation but that Rowland did not return his calls.

In 2007, Thompson submitted applications for two park supervisor positions at Hayes Park and Madden Park. The Park District sets forth the following "desirable minimum qualifications" for park supervisors:

> Bachelor's Degree in Physical Education, Recreation, Leisure Studies, Park Management or related field plus 3 years of recreation supervisory experience required. Bachelor's Degree plus one year experience as a [Chicago Park

5

> District] Playground Supervisor also qualifies for this position. Requirement may be temporarily waived for applicants who have a total of 8 years or more experience as Instructor/Playground Supervisor, providing (1) and [sic] at least 2 of these years have been as Playground Supervisor and (2) they agree to complete the required Bachelor's Degree within two years of their appointment as Park Supervisor.

Def.'s LR 56.1 Stat., Tab E, Ex. 13. Thompson did not possess a bachelor's degree and lacked previous experience as a playground supervisor. He was also unable to complete a bachelor's degree within two years because, though he had attended college classes at various times in the 1980s and mid-1990s, he did not believe that any of his college credits could be applied to a degree due to their age.

Thompson was not interviewed for a park supervisor position. In September 2007, he received a letter from the Park District informing him that his "skills and experience did not match the Chicago Park District's requirements for the position." *Id.*, Tab B, Ex. 20. The employee selected to fill the Hayes Park vacancy had a bachelor's degree. Bobbie Beckham, the employee selected for the Madden Park vacancy, laterally transferred from another park supervisor position he had held since September 2005.

Thompson did not apply for any other Park District positions in 2007. He testified that he had previously applied for playground supervisor positions in 2003, 2004, and 2005 and engineer positions in 2000 or 2001.

On April 3, 2008, Rowland sent Thompson a letter that stated:

> This is a letter to remind you that your Leave of Absence will expire on April 7, 2008. . . . If you fail to return from your leave by April 7, 2008, your employment rights will be terminated.
>
> In order to return to work, you need to successfully pass the swim skills test and the American Red Cross Lifeguard Challenge requirements; a release to full duty

6

> from your doctor is also required (or our doctor). Please submit this documentation to Human Resources prior to returning.

*Id.*, Ex. 26. By April 7, 2008, Thompson did not submit any documentation from his doctor indicating that he could return to work in any capacity. He also did not pass, or attempt to pass, the swim test. On April 7, 2008, the Park District terminated his employment.

Thompson has asserted discriminatory discharge, failure to promote, and failure to accommodate claims under the ADA. He also asserts discriminatory discharge and failure to promote claims under the ADEA. The Park District has moved for summary judgment on all of the claims.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the Court draws reasonable inferences in favor of the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

**I.   ADA discriminatory discharge claim (count 2)**

Thompson contends that the Park District discharged him in violation of the ADA. The version of the ADA that was in effect at the time of Thompson's termination

7

prohibited covered employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004) (quoting 42 U.S.C. § 12112(a) (2008)). The statute defined a qualified individual with a disability as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Kotwica v. Rose Packing Co., Inc.*, No. 09 C 3640, 2011 WL 982380, at *3 (7th Cir. Mar. 22, 2011) (quoting 42 U.S.C. § 12111(8) (2008)); *see also Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). In determining whether a person can perform the essential functions of the position, courts give "consideration . . . to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8) (2008). "The plaintiff bears the burden of proof on the issue of whether []he is a 'qualified individual.'" *Ross v. Indiana State Teacher's Ass'n Ins. Trust*, 159 F.3d 1001, 1013 (7th Cir. 1998).

A plaintiff may present either direct or indirect evidence of discrimination to support a discriminatory discharge claim. *Buie*, 366 F.3d at 503. Thompson proceeds under the indirect method, which requires him to show that: "(1) he is disabled under the ADA, (2) he was meeting his employer's legitimate employment expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees without a disability were treated more favorably." *Lloyd*, 552 F.3d at 601 (citations omitted). If he

8

establishes a prima facie case, the burden shifts to the Park District to articulate a legitimate, nondiscriminatory reason for the discharge. *See id.* (citing *Buie*, 366 F.3d at 503). To prevail, Thompson must then prove by a preponderance of the evidence that the Park District's articulated reason is pretextual. *See id.* (citing *Buie*, 366 F.3d at 503). At the present stage, of course, the Court assesses only whether a reasonable jury could find in Thompson's favor.

The Park District concedes for the purposes of its motion that Thompson had a disability. The Park District denies, however, that Thompson could perform the essential functions of his position, that he satisfied the Park District's legitimate employment expectations at the time of his discharge, that the Park District treated similarly situated employees more favorably, and that he has presented evidence of pretext.

Thompson has not provided evidence from which a reasonably jury could find that, at the relevant time, he could perform all the essential functions of the monthly natatorium instructor position with or without accommodation. Beginning in February 2007, Dr. Stannard restricted Thompson from all swimming activities. Dr. Stannard subsequently prohibited Thompson from working at all due to various medical conditions. As of April 7, 2008, when Thompson's leave expired, Dr. Stannard had not released him to work in any capacity. Thompson offers no evidence suggesting that he could swim or return to work at the time of his discharge, with or without an accommodation. "Not working is not a means to perform the job's essential functions." *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003); *see also Waggoner v. Olin Corp.*, 169 F.3d 481, 482 (7th Cir. 1999) (same); *Mojica v. Southwest Airlines Co.*,

No. 94 C 5552, 1999 WL 262130, at *5-6 (N.D. Ill. Apr. 21, 1999) (plaintiff was not a qualified individual because, at the time of her discharge, she was unable to return to work). Likewise, as Thompson concedes, swimming is an essential function of the monthly natatorium instructor position.

For similar reasons, Thompson fails to provide evidence from which a reasonable jury could find that he was able to meet the Park District's legitimate employment expectations at the time of his discharge. Evidence that an employee cannot work contradicts any claim that he was performing to his employer's legitimate expectations. *See Johnson v. Exxonmobil Corp.*, 426 F.3d 887, 893 (7th Cir. 2005).

Thompson counters that a genuine fact question exists regarding whether the Park District properly requested that he provide a "release to full duty," as opposed to a partial release. He also challenges the Park District's requirement that he complete the swim test without modification. Thompson, however, bears the burden of demonstrating the existence of a genuine fact question regarding whether he was a "qualified individual" within the meaning of the ADA and was able to meet the Park District's legitimate employment expectations at the time of his discharge. Because no reasonable jury could find that he has met this burden, Thompson's discriminatory discharge claim fails. The Court therefore need not address whether Thompson has provided evidence that the Park District treated similarly situated employees more favorably and whether he has presented evidence of pretext.

II. **ADA failure to promote claim (count 1)**

Thompson also contends that the Park District discriminated against him on the basis of disability when it failed to promote him to park supervisor. To succeed on this

10

claim, Thompson must present either direct or indirect evidence of discrimination. *See Fischer v. Avanade, Inc.*, 519 F.3d 393, 401-02 (7th Cir. 2008) (citation omitted). Thompson proceeds pursuant to the indirect method, which requires a showing that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was rejected for the position; and (4) the employer gave the position to a person outside the protected class who was similarly or less qualified. *See Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010) (citation omitted). If Thompson establishes a prima facie case, the burden shifts to the Park District to articulate a legitimate, nondiscriminatory reason for the denial of the promotion. *See id.* (citations omitted). The burden then shifts back to Thompson to show that the articulated reason is pretextual. *See id.* (citation omitted).

The Park District denies that Thompson was qualified for the park supervisor position, that it gave the position to similarly or less qualified employees, and that he has produced evidence of pretext. The Court addresses each argument in turn.

First, Thompson fails to demonstrate a genuine factual dispute regarding whether he was qualified for the park supervisor position. The Park District's "desirable minimum qualifications" for the position included a bachelor's degree, which Thompson admittedly did not have. The job description provided for a temporary waiver of the bachelor's degree requirement

> for applicants who have a total of 8 years or more experience as Instructor/Playground Supervisor, providing (1) and [sic] at least 2 of these years have been as Playground Supervisor and (2) they agree to complete the required Bachelor's Degree within two years of their appointment as Park Supervisor.

Def.'s LR 56.1 Stat., Tab E, Ex. 13. Thompson concedes, however, that he had neither two years of experience as a playground supervisor nor the ability to complete a bachelor's degree within two years.

Thompson argues that he satisfied the qualifications for the position because he had accrued "six years of experience performing the same duties as a Playground Supervisor" while serving as a monthly natatorium instructor. Pl.'s Resp. to Mot. for Summ. J. 6. Yet Thompson provides no evidence that performing some of the duties of a playground supervisor and actually serving in that position are equivalent. Moreover, Thompson concedes that he could not have obtained a bachelor's degree within two years. He was thus ineligible for a temporary waiver of the degree requirement regardless of his experience level.

Park supervisor Erin Joyce's statement that "she has no idea why the degree is required" does not save Thompson's claim. *See* Pl.'s LR 56.1 Stat. ¶9. First, Joyce's lack of knowledge about the purpose of the requirement does not call into question its existence or legitimacy. Second, courts generally defer to an employer's "business judgments" as to the proper qualifications for a given position. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002).

Thompson also claims that the Park District had an unwritten policy of "grandfathering" in employees without bachelor's degrees who had worked as long as he had. *Id.* In support, he cites the following testimony from his deposition:

    Q.    What job classifications were grandfathered in?
    A.    For example, playground supervisor now. If you are currently a monthly instructor, you don't have to have the college part of it. They will grandfather you in, and I could be slightly mistaken, but I believe they give you a time frame on which you have to acquire the degree or whatever the

> official requirement is. And I've seen them do that through the years for other positions. Just through the years can I recall them, no. I've seen a lot of things in 20 years.
> Q. So what you are saying is somebody that doesn't have a degree, if they say they'll get a degree within a certain amount of time, they can be –
> A. Yes.
> Q. -- qualified for the position?
> A. Yes.

Def.'s Reply to Mot. for Summ. J, Ex. 1. These statements do not create a genuine issue of fact regarding Thompson's qualifications for the park supervisor position. Even putting aside the equivocal nature of the testimony, Thompson provides no evidence to suggest that he could have obtained a bachelor's degree within the given time frame. The Court concludes that a reasonable jury could not find Thompson qualified for the park supervisor position.

Second, Thompson fails to provide evidence that the Park District awarded park supervisor vacancies to similarly or less qualified employees. Without citing any evidence, Thompson claims that he shared the same qualifications as Bobbie Beckham, who received the park supervisor position in Madden Park. Thompson concedes, however, that Beckham laterally transferred to the position after having served for two years as a park supervisor in a different location. An employee who moves laterally into a position is not similarly situated to an employee who requires a promotion to the position. *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001). Moreover, the park supervisor selected to fill the Hayes Park vacancy had a bachelor's degree. Indeed, Thompson concedes that he cannot identify anyone who received a park supervisor position without either a bachelor's degree or satisfaction of the requirements for a temporary waiver.

Third, even if Thompson could establish a prima facie case of discrimination, he has offered no evidence that the Park District's stated reason for denying him the promotion to park supervisor was pretextual. The September 24, 2007 letter that Thompson received from the Park District stated that his "skills and experience did not match the Chicago Park District's requirements for the position." Def.'s LR 56.1 Stat., Tab B, Ex. 20. That statement is fully consistent with the fact that Thompson neither had a bachelor's degree nor satisfied the requirements for a temporary waiver of the degree requirement. *See, e.g.*, *Lloyd*, 552 F.3d at 601-02. The Court accordingly grants summary judgment in favor of the Park District on Thompson's failure to promote claim.

## III. ADA failure to accommodate claim (count 3)

In Thompson's final ADA claim, he alleges that the Park District failed to accommodate his disability. "Under the ADA, a failure to make reasonable accommodations for a known disability constitutes unlawful discrimination." *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 545 (7th Cir. 2008) (citing 42 U.S.C. §§ 12112(b)(5)(A), 12112(a)). Pursuant to this principle, "an employer may be required to reassign a disabled employee to a vacant position if the employee no longer can perform the essential functions of the job [he] holds." *Jackson v. City of Chicago*, 414 F.3d 806, 812-13 (7th Cir. 2005) (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000)). To survive summary judgment on a failure to accommodate claim, an employee "must offer evidence that he is a qualified individual with a disability; that [the employer] was aware of his disability; and that [the employer] failed to reasonably

14

accommodate the disability." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1007 (7th Cir. 2009) (citing *Mobley*, 531 F.3d at 545 (7th Cir. 2008)). "In conjunction with this third element, the ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *Mobley*, 531 F.3d at 545 (citation and internal quotation marks omitted).

"[W]hen considering the success of the interactive process, [courts] first look at whether there is a genuine issue of material fact regarding the availability of a vacant position to accommodate the employee." *Jackson*, 414 F.3d at 813 (citation and internal quotation marks omitted). "It is the plaintiff's burden to show that a vacant position exists for which []he was qualified." *Id.* (citation and internal quotation marks omitted). "If such a position is available, then the court may consider whether failure to provide that accommodation was due to a breakdown in the interactive process." *Id.* (citation and internal quotation marks omitted).

Thompson fails to meet his burden to show that a vacant position existed for which he was qualified. As the Court explained earlier, Thompson had not obtained a release to return to work in any capacity from any physician at the time of his discharge. *See Mojica*, 1999 WL 262130 at *6-7 (employer has no legal obligation to inquire about whether there is any reasonable accommodation to allow an employee to return to work when physician represents that employee still cannot work). Moreover, Thompson concedes that Saieva "repeatedly told Thompson that, if he wanted another position within the Park District, the proper process was for him to apply for the position and qualify for it" and that the only position Thompson applied for in 2007 was the park

15

supervisor position for which the Court has concluded he did not qualify. Def.'s LR 56.1 Stat. ¶¶58-59.

Thompson counters that the ADA required the Park District to identify a position for him. Thompson is correct that, "[t]ypically, the burden of exploring reasonable accommodation lies with the employer." *Jackson*, 414 F.3d at 813 (citation and internal quotation marks omitted). However, "a plaintiff cannot seek a judicial remedy for the employer's failure to accommodate h[is] disability without showing that a reasonable accommodation existed." *Mays v. Principi*, 301 F.3d 866, 870 (7th Cir. 2002); *see also Jackson*, 414 F.3d at 813. Thompson has failed to make such a showing. *See Dargis v. Sheahan*, 526 F.3d 981 (7th Cir. 2008) (an employer's failure to engage in the interactive process does not give rise to a claim if the plaintiff's inability to engage in physical activity is "severe enough to bring the interactive process to a prompt end"); *Delgado v. Certified Grocers Midwest, Inc.*, 282 Fed. App'x 457, 463 (7th Cir. 2008) (unpublished) (affirming summary judgment because plaintiff "has failed to submit evidence that there was any reasonable way for [his former employer] to accommodate [his] restriction").

## IV. ADEA claims (counts 5 and 6)

Thompson alleged in his complaint that the Park District failed to promote him and terminated his employment because of his age in violation of the ADEA. The Park District has moved for summary judgment on these claims. Thompson did not address the Park District's arguments in his response to the motion for summary judgment. He has thus effectively conceded that his ADEA claims cannot survive. *See Palmer v.*

*Marion County*, 327 F.3d 588, 597-99 (7th Cir. 2003); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562-63 n.2 (7th Cir. 1996).

**Conclusion**

For the foregoing reasons, the Court grants the Park District's motion for summary judgment [docket no. 44] and directs the Court to enter judgment in favor of the defendant.

```
_____
   MATTHEW F. KENNELLY
   United States District Judge
```

Date: April 8, 2011